IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

LEE SIMMONS, et ux., and PAULA SIMMONS                                PLAINTIFFS

v.                                                       CIVIL ACTION NO. 4:12-CV-00063-GHD-JMV

MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY            DEFENDANT

## MEMORANDUM OPINION GRANTING PLAINTIFFS' MOTION TO REMAND

Presently before this Court is Plaintiffs' motion to remand the case to state court [7]. Upon due consideration, the Court finds that the motion is well taken.

### A. Factual and Procedural Background

On May 18, 2012, Plaintiffs filed a complaint in the Circuit Court of Sunflower County, Mississippi, against Mississippi Farm Bureau Casualty Insurance Company ("Defendant") to recover for Defendant's alleged misrepresentations and failure to procure a flood insurance policy that would have covered flood damage to Plaintiffs' real property. Defendant timely removed this case on the basis of federal question jurisdiction and filed its answer and affirmative defenses [5]. Plaintiffs subsequently filed a motion to remand [7] the case to state court, Defendants filed a response, and Plaintiffs filed a reply. The matter is now ripe for review.

### B. Standard of Review

The removal statute provides in pertinent part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United

1

>States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). A case may be remanded upon a motion filed within thirty days after the filing of the notice of removal on any defect except subject matter jurisdiction, which can be raised at any time by any party or *sua sponte* by the court. *See Wachovia Bank, N.A. v. PICC Prop. & Cas. Co.*, 328 F. App'x 946, 947 (5th Cir. 2009). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Any "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Federal diversity jurisdiction requires complete diversity between all plaintiffs and all defendants and an amount in controversy that exceeds $75,000.00. *See* 28 U.S.C. § 1332(a). In the case *sub judice*, there is no question that Plaintiffs and Defendant are Mississippi citizens for purposes of diversity jurisdiction, and thus, that diversity jurisdiction is not a removable basis. Thus, the sole issue before the Court is whether the Court has subject matter jurisdiction over this matter based on federal question jurisdiction. *See* 28 U.S.C. § 1331.

The party seeking removal bears the burden of demonstrating that a federal question exists. *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008). A federal question exists "if there appears on the face of the complaint some substantial, disputed question of federal law." *In re Hot-Hed, Inc.*, 477 F.3d 320 (5th Cir. 2007) (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 12, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)). Whether a case is removable upon the basis of federal question jurisdiction is to be determined by the allegations of the plaintiff's "well-pleaded complaint" as of the time of removal. *See, e.g., Medina v.*

*Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001); *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995). Plaintiff is the master of his complaint, and he may avoid federal jurisdiction by exclusive reliance on state law. *Lorenz v. Tex. Workforce Com'n*, 211 F. App'x 242, 244 (5th Cir. 2006) (per curiam). Thus, if, on its face, the plaintiff's complaint raises no issue of federal law, federal question jurisdiction is lacking. *Hart v. Bayer Corp.*, 199 F.3d 239, 244 (5th Cir. 2000) (citing *Franchise Tax Bd.*, 463 U.S. at 10, 103 S. Ct. 2841).

A plaintiff, however, cannot defeat removal of a federal claim by "artfully pleading" it as a state-law claim. *Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 188 (5th Cir. 2001) (citing *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475, 118 S. Ct. 921, 139 L. Ed. 2d 912 (1998)). The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim. *Bernhard v. Whitney Nat'l Bank*, 523 F.3d 546 (5th Cir. 2008) (citing *Rivet*, 522 U.S. at 475, 118 S. Ct. 921). Federal question jurisdiction exists when a state law is completely preempted because "there is, in short, no such thing as a state-law claim." *Id.* at 551 (citing *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003)).

### C. Discussion

Plaintiffs purchased flood insurance through the Federal Emergency Management Agency's ("FEMA"'s) Write Your Own ("WYO") flood insurance program under the National Flood Insurance Act (the "NFIA").[1] "Federal law preempts state[-]law tort claims arising from <u>claims handling</u> by a WYO." *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009) (quoting *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 390 (5th Cir. 2005) (internal quotation marks

---

[1] The NFIA defines the term "Write Your Own" as "the cooperative undertaking between the insurance industry and the Federal Insurance Administration which allows participating property and casualty insurance companies to write and service standard flood insurance policies." *See* 42 U.S.C. § 4004(a)(5).

omitted; emphasis added). However, "federal law does not preempt state-law <u>procurement-based claims</u>." *Id.* at 757 (emphasis added). The issue before this Court in the case *sub judice* is whether Plaintiffs' claims concern the handling or procurement of the flood insurance policy, and thus whether Plaintiffs' case is properly removed to this Court based on federal question jurisdiction.

The Fifth Circuit has explained the National Flood Insurance Program as follows:

> By enacting the National Flood Insurance Act of 1968, 42 U.S.C. § 4001 *et seq.*, Congress established the Program to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts. FEMA administers the Program. [*See* 42 U.S.C. § 4011(a) (2006).] Within the Program, the WYO program allows private insurers to issue flood insurance policies in their own names. Under this framework, the federal government underwrites the policies and private WYO carriers perform significant administrative functions including "arrang[ing] for the adjustment, settlement, payment and defense of all claims arising from the policies." [*Gallup v. Omaha Prop. & Cas. Co.*, 434 F.3d 341, 342 (5th Cir. 2005).] WYO carriers must issue policies containing the exact terms and conditions of [the Standard Flood Insurance Policy ("SFIP")] set forth in FEMA regulations. [*See* 44 C.F.R. §§ 61.4(b), 62.23(c)-(d) (2008) (mandating use of SFIP terms); 44 C.F.R. pt. 61, app. A(1) (setting forth SFIP terms).] Additionally, FEMA regulations govern the methods by which WYO carriers adjust and pay claims. [*C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004) (citing 44 C.F.R. §§ 61.1-78.14).] Although WYO carriers play a large role, the government ultimately pays a WYO carrier's claims. [*See Gallup*, 434 F.3d at 342.] When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, which are considered "part of the . . . claim expense allowance", [44 C.F.R. § 62.23(i)(6) (2008)]; FEMA reimburses these costs. [*C.E.R.*, 386 F.3d at 270 & n.9 (citing 42 U.S.C. § 4017(d)(1)) (noting that Congress reimburses costs, including defense costs, for adjustment and payment of claims).] Yet, if "litigation is grounded in actions by the [WYO] Company that are significantly outside the scope of this Arrangement, and/or involves issues of agent negligence," then such costs will not be reimbursable to the WYO carrier. [44 C.F.R. pt. 62, app. A, art. III(D)(3)(a).]

*Grissom v. Lib. Mut. Fire Ins. Co.*, 678 F.3d 397, 399 (5th Cir. 2012) (quoting *Campo*, 562 F.3d at 754).

In *Grissom*, the Fifth Circuit explained:

> The key factor to determine if an interaction with an insurer is "claims handling" is the status of the insured at the time of the interaction between the parties. If the individual is already covered and in the midst of a non-lapsed insurance policy, the interactions between the insurer and insured . . . are "claims handling" subject to preemption.

*Id.* at 401. "[I]nteractions between the insurer and an insured seeking payment for hurricane damage to his home," including those to recover for the insurer's denial of a flood insurance claim on the insured's policy, constitute claims handling. *Id.* at 400; *see Wright*, 415 F.3d at 385, 389–90. However, interactions between the insurer and an insured to recover for the insurer's alleged negligence during a lapse in policy coverage constitute procurement. *See Campo*, 562 F.3d at 752.

In *Campo*, the plaintiff had claimed that Allstate made negligent misrepresentations in violation of state law that caused the plaintiff not to reinstate his expired flood insurance policy prior to Hurricane Katrina destroying the plaintiff's home, and Allstate had argued that these claims were preempted under federal law because they concerned claims handling. *Id.* at 752, 755.[2] The Fifth Circuit held that the plaintiff's claims were related to policy procurement, not claims handling, and thus that plaintiff's claims were not preempted by federal law. *Id.* The Fifth Circuit reasoned that "[t]o the extent that this case involves handling of a 'claim,' it is merely a 'fictitious claim' in the sense that the act of filing a claim on an <u>expired</u> policy, i.e., a

---

[2] The Court notes that the handling/procurement distinction analysis is equally applicable in both the context of whether federal jurisdiction exists and whether the claims are preempted by federal law. *See id.* at 756 n.33.

dormant policy, is equivalent to filing no claim at all" and thus that "Allstate . . . by definition [was] incapable of handling any new claims based on post-expiration occurrences." *Id.* at 756 (emphasis in original). The Fifth Circuit found that the facts of the case indicated that the claim was procurement-related because Allstate's alleged misrepresentations occurred when the plaintiff's only relationship with Allstate was that of a former and a potential future policyholder and reasoned that "[t]o hold otherwise would permit insurers like Allstate to ensure unilaterally that disputes would be classified as preempted handling-related suits by simply acting as though they were handling claims when in fact none existed as a matter of law." *Id.* The Fifth Circuit explained its holding in a subsequent *per curiam* opinion on the bench ruling: "[B]ecause (1) [plaintiff's] policy had expired when he made his claim and (2) the SFIP provisions dealing with policy renewal did not address policy renewal with sufficient specificity to render [plaintiff's] claims handling-related, [plaintiff's] state-law claims relate to insurance procurement [and] are not preempted by federal law . . . ." *Campo*, 440 F. App'x 298, 300 (5th Cir. 2011) (per curiam). In *Grissom*, the Fifth Circuit distinguished *Campo* thus: "*Campo*'s clear holding [is] that the lapse in coverage turned what would otherwise be a renewal into the procurement of a new policy." *Grissom*, 678 F.3d at 401.

In the case *sub judice*, Plaintiffs allege that they are not seeking coverage under the SFIP or recovery on the basis of a contract from National Flood Insurance Program funds, but are instead seeking tort damages from their insurance agent's own funds and/or its errors and omissions coverage funds for their agent's tortious conduct in failing to procure the specific coverage explicitly requested and represented to have been procured. Pls.' Mot. Remand [7] ¶ 9. The Court finds from a plain reading of Plaintiffs' complaint that Plaintiffs allege the following facts: **(1)** Plaintiffs had a longstanding fiduciary relationship with Defendant and Defendant's

6

agent concerning insurance, Pls.' Compl. [2] ¶ 7; **(2)** based on this relationship, Plaintiffs sought flood insurance coverage from Defendant and Defendant's agent on real property Plaintiffs were about to purchase, *id.*; **(3)** Plaintiffs, Defendant, and Defendant's agent were all aware that flooding of the real property was imminent and that the threat of this flood was the reason for the insurance transaction, *id.* ¶ 10; **(4)** Plaintiffs submitted an application for the insurance and delivered the premium payment to Defendant's agent, *id.* ¶ 12; **(5)** Plaintiffs asked Defendant's agent to procure the flood insurance for them, *id.*; **(6)** Plaintiffs proceeded with the closing of the purchase of subject real property based on Defendant's and Defendant's agent's assurances of immediate flood damage coverage under the policy, *id.* ¶ 13; **(7)** Plaintiffs' subject real property suffered damages due to subsequent flooding, *id.* ¶ 16; **(8)** only after the flooding occurred did Plaintiffs receive a copy of the subject flood insurance policy, *id.* ¶ 15; **(9)** Plaintiffs subsequently filed a flood damage claim in accordance with the subject policy, *id.* ¶ 16; and **(10)** Plaintiffs were denied coverage for the property damages due to flooding, based on an exclusionary clause in the subject policy providing that the policy would not cover damage due to a flood already in progress at the time the policy term began, *id.* ¶ 17. Plaintiffs concede that the SFIP does not cover the flood damage sustained by their real property, as the damage was caused by a flood in progress at the time the SFIP term began; instead, Plaintiffs seek recovery under state-law theories of negligent misrepresentation and failure to procure the requested insurance policy. Pls.' Mot. Remand [7] ¶¶ 7, 9.

The Court finds that the alleged <u>misrepresentations</u> concerning flood insurance coverage occurred when Plaintiffs' only relationship with Defendant was that of potential future flood insurance policyholders, and further, that Defendant's alleged misrepresentations were allegedly of a kind that could lull Plaintiffs into believing that they would receive immediate coverage for

the flood damage under Defendant's policy, thus dissuading Plaintiffs from seeking flood insurance coverage elsewhere. *See Campo*, 562 F.3d at 756. The misrepresentation claim appears to fall within the "species of insurance procurement" claims referenced in *Campo*. *See id.* The failure-to-procure claim also appears to fall within this species of claims. In both claims, Plaintiffs do not seek recovery for any denial of coverage under the subject policy, but rather for the conduct of Defendant in the representations made about the policy and in the procurement of the subject policy. *See* Pls.' Compl. [2] ¶ 18. Such procurement-related claims sound in state law. *See Haggans v. State Farm Fire and Cas. Co.*, 803 So. 2d 1249, 1252 (Miss. Ct. App. 2002). Plaintiffs' alleged reliance on Defendant's alleged misrepresentations with respect to flood insurance coverage lasted throughout the initial application, delivery of premium payment, occurrence of flood damage, receipt of copy of policy, submission of claim pursuant to the policy, and denial of coverage under the policy. Although this is doubtless a close question of law, when compared with the holding in *Grissom*, for example, Plaintiffs in this case challenge alleged representations made by Defendant prior to the application of the policy and in the infancy of the procurement of flood damage protection: procurement-related—whereas the plaintiff in *Grissom* challenged the lack of information he received while he was already insured concerning his eligibility for additional flood insurance coverage: claims handling-related. *See Grissom*, 678 F.3d at 401. The Court finds that Plaintiffs' complaint does not present a federal question claim, but instead presents state-law tort claims that fall within the procurement-related SFIP claims not preempted by federal law, as the claims allege negligence on the part of Defendant. *See* 44 C.R.F. pt. 62, app. A, art. III(D)(3)(a) (noting that "litigation . . . grounded in actions by the [WYO] Company that . . . involve[] issues of agent negligence" are not within the scope of the NFIA); *see also Rhodes v. State Farm Fire and Cas. Co.*, Civil No. 1:08CV674-

8

HSO-RHW, 2009 WL 563876, at *4–7 (S.D. Miss. Mar. 4, 2009) (finding plaintiff bringing negligent misrepresentation claim related to procurement of SFIP and failure to procure claim, *inter alia*, had not attempted to plead a federal question claim). Because this Court does not have diversity jurisdiction over Plaintiffs' state-law claims due to lack of complete diversity of citizenship, the Court is devoid of jurisdiction to hear this case. Plaintiffs' case is properly in state court.

### *D. Conclusion*

For all the foregoing reasons, Plaintiffs' motion to remand to state court [7] is GRANTED, and the case is remanded to the Circuit Court of Sunflower County, Mississippi.

An order in accordance with this opinion shall issue this day.

THIS, the 29th day of July, 2013.

SENIOR JUDGE